**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | | |
|---|---|---|
| **REGINALD SMITH,** | : | **CIVIL ACTION NOS.** |
| **BOP Reg # 60061-019,** | : | **1:12-CV-868-WSD-AJB** |
| Movant, | : | **1:12-CV-869-WSD-AJB** |
| | : | |
| v. | : | **CRIMINAL ACTION NOS.** |
| | : | **1:08-CR-190-WSD-AJB-8** |
| **UNITED STATES OF AMERICA,** | : | **1:09-CR-341-WSD-AJB-1** |
| Respondent. | : | |
| | : | **MOTION TO VACATE** |
| | : | **28 U.S.C. § 2255** |

**UNITED STATES MAGISTRATE JUDGE'S**
**FINAL REPORT AND RECOMMENDATION**

Movant, a federal prisoner, has filed a 28 U.S.C. § 2255 motion to vacate his combined sentence of ninety-eight months' imprisonment in the above two criminal cases, which sentence he received in this Court on February 22, 2010, after pleading guilty to one count of conspiracy to commit bank fraud and one count of aggravated identity theft. Now before the Court are the motions, [1:08-cr-190, Doc. 308; 1:09-cr-341, Doc. 11], and the Government's responses, [1:08-cr-190, Doc. 313; 1:09-cr-341, Doc. 13].[1] For the reasons set forth below, it is **RECOMMENDED** that Movant's

---

[1] Because the aforementioned pleadings are identical in these two cases, the remainder of this Report and Recommendation cites only to the pleadings in 1:08-cr-190. The citation references are to the page and document numbers in the Court's CM/ECF system.

§ 2255 motions be **DENIED**.

I. **Procedural History**

On May 13, 2008, a grand jury sitting in this District indicted Movant in Case No. 1:08-cr-190 on charges of conspiracy to commit bank fraud (count 1), bank fraud (counts 2-25), aggravated identity theft (counts 26-49), and theft of the mail (counts 50-52). [Doc. 313 at 1-2; *see* Doc. 11]. On August 14, 2009, the United States Attorney filed a criminal information in Case No. 1:09-cr-341, charging Movant with one count of aggravated identity theft. [Doc. 313 at 2; *see* No. 1:09-cr-341, Doc. 1]. The proceedings for the two cases were consolidated for Movant's guilty plea and sentencing. [*See* Doc. 313 at 2 n.1]. Therefore, all citations hereinafter to the criminal case documents are to those docketed in Case No. 1:08-cr-190.

On August 14, 2009, Movant pled guilty to count one in each case, and on February 22, 2010, he received a combined sentence of ninety-eight months' imprisonment. [*Id.* at 2; *see* Docs. 189, 228]. Movant filed a notice of appeal, and on March 16, 2011, the Eleventh Circuit affirmed his convictions and sentences. [Docs. 236, 299]. The Government has provided additional factual detail as follows:

> Defendant stipulated that he was involved in a check theft, identity theft, and check cashing ring that operated from at least January 2006 through May 2007 that involved between 50 and 250 victims and caused

AO 72A
(Rev.8/82)

losses totaling at least $450,000. (Doc. 260-2-6).

During the conspiracy, defendant was employed by the United States Postal Service at a bulk mail facility in Atlanta, Georgia. (PSR ¶ 22). Defendant stole boxes of checks from the mail. Defendant then provided the stolen boxes of checks to codefendant Tequilia Hamilton who in turn provided them to Viola Hill. (*Id.*). Hill paid Hamilton $250.00 per box and Hamilton, in turn, paid defendant. (*Id.*).

Once Hill obtained the stolen checks, she provided the names and addresses of the account holders of the checks to codefendant Carlos Jennings. (*Id.*). Jennings obtained the check victims' social security numbers and dates of birth, and provided that information to Hill. (*Id.*). Hill also obtained fraudulent identification cards and driver's licenses in the check victims' names and addresses. (*Id.*). Check cashers then traveled with Hill and her husband to casinos in Mississippi and Louisiana to cash the stolen checks. (*Id.*). Hill distributed the stolen checks, stolen identification information, and fake [ID]s to the check cashers. (*Id.*). Hill collected half of the proceeds that the check cashers made from cashing the stolen checks. (*Id.*).

For the bank fraud conspiracy offense the PSR determined that USSG § 2B1.1 was the applicable Sentencing Guidelines section to use to determine the advisory guidelines range. (PSR ¶ 90). Defendant submitted objections to the loss amount, number of victims, the sophisticated means enhancement, and the enhancement for the production and use of device making equipment and counterfeit identification documents. (PSR ¶¶ 91, 92, 93, 94). The Government conceded that the two point enhancement for the production and use of device making equipment and counterfeit [ID]s should not apply given that defendant pleaded guilty to aggravated identity theft and would receive a two year consecutive sentence for that offense. (Doc. 195). Therefore, the district court sustained defendant's objection on that issue. (Doc. 260-17). At the sentencing hearing defendant stipulated that it was reasonably foreseeable to him that the intended loss resulting from the

3

conspiracy was $458,317 and that there were more than 50 victims whose checkbooks were stolen from the mail. (Doc. 260-5).

The only contested guidelines issue at sentencing was the two point enhancement because the offense involved sophisticated means under USSG 2B1.1(b)(9)(C). (PSR ¶ 93). In ruling on the application of the sophisticated means enhancement, the district court reiterated its finding made earlier with respect [to] codefendants that the decision to cash nearly all of the checks at out-of-state casinos demonstrated a practical sophistication by choosing a cash rich environment in which the defendants perceived detection would be more difficult. (Doc. 260-15). The court also reiterated its previous findings that the compartmentalization of the roles of the conspirators was a form of practical sophistication in an effort to avoid detection. (*Id.*). Finally, the court noted that the recruitment of a coconspirator who had access to personal identification information of the check victims which would aid in the successful negotiation of the checks was another indication that the scheme involved sophisticated means. (*Id.*). Accordingly, the court overruled defendant's objection to the sophisticated means enhancement. (Doc. 260-17).

For the bank fraud conspiracy the court determined that defendant's offense level was 26, defendant's Criminal History category was I, and defendant's custody guideline range was 63-78 months. (Doc. 260-19). The court gave the parties an opportunity to allocute for a reasonable sentence under 18 U.S.C. § 3553. (Doc. 260-19-32). Defendant was allowed to address the court before the court imposed sentence. (Doc. 260-32-33).

The only issue raised by defendant on direct appeal was the application of the sophisticated means enhancement. *United States v. Clark, et al.*, 417 Fed. Appx. 906, 908 (11th Cir. 2011). In addressing defendant's contentions as to why the enhancement should not have been applied to him, the Eleventh Circuit specifically noted that "Smith argues that there was nothing especially complex or intricate about his conduct."

4

> (*Id.*). The court found that the district court did not clearly err in finding that the scheme involved sophisticated means. (*Id.*). Accordingly, defendant's sentence was affirmed. 417 Fed. Appx. at 910.

[Doc. 313 at 3-6 (formatting altered)].[2]

On March 13, 2012, Movant filed his § 2255 motion to vacate sentence, raising the following grounds for relief:

(1)  the two point enhancement for sophisticated means does not apply to him;

(2)  he was unlawfully charged with aggravated identity theft because he did not know any of his victims personally and did not possess their identifications;

(3)  the restitution amount is miscalculated and unlawful;

(4)  he was improperly given one criminal history point for a case that was more than fifteen years old.

[Doc. 308 at 4-5]. Movant's supporting arguments, set forth in his Memorandum of Law, [Doc. 308-1 at 7-23], are discussed below.

## II.  Discussion

### A.  Ground One:  Ineffective Assistance of Counsel and the Sophisticated Means Sentencing Enhancement

In his motion to vacate, Movant claims in ground one that the sophisticated means sentencing enhancement does not apply to him. (Doc. 308 at 4). However,

---

[2]  Movant has attached his Presentence Investigation Report ("PSR") as an exhibit to his motion to vacate. [*See* Doc. 308-2 at 34-43].

5

under the heading of Ground One in his supporting brief, Movant presents several related claims of ineffective assistance of appellate counsel, after acknowledging that "the Eleventh Circuit properly rejected [appellate counsel's] argument" that this Court erred in finding that the bank fraud conspirators used sophisticated means. [Doc. 308-1 at 10]. Movant asserts that appellate counsel instead "should have argued . . . the imposition of a sentencing enhancement for Sophisticated Means, [Movant's] role pursuant to U.S.S.G. 2B1.1(b)(1)([H]) and his offense level and subsequent increase by 14 levels." [*Id.*]. In addition, appellate counsel "should have argued [that Movant's] criminal history classification should have been reduced," [*id.*], and that under *United States v. Booker*, 543 U.S. 220 (2005), his "Sixth Amendment right to a jury trial was violated because the district court enhanced his sentence on facts not proved beyond a reasonable doubt," [Doc. 308-1 at 11].[3]

The Supreme Court set forth the standard for evaluating claims of ineffective assistance of counsel in *Strickland v. Washington*, 466 U.S. 668 (1984). "An ineffectiveness claim . . . is an attack on the fundamental fairness of the proceeding

---

[3] Movant argues under Ground Two of his supporting brief that he wrongly received the sentencing enhancement for sophisticated means, [Doc. 308-1 at 13-16], but as noted in the text, Movant raised this claim on direct appeal and thus may not raise it again on collateral review.

6

whose result is challenged." *Id.* at 697. The analysis involves two components, but a court need not address both if the petitioner "makes an insufficient showing on one." *Id.*

First, a federal habeas court determines "whether, in light of all the circumstances, the identified acts or omissions [of counsel] were outside the wide range of professionally competent assistance." *Id.* at 690. The court "must be highly deferential" in scrutinizing counsel's performance and "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. In other words, the petitioner "must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.* (Internal quotations omitted). "Given the strong presumption in favor of competence, the petitioner's burden of persuasion—though the presumption is not insurmountable—is a heavy one." *Chandler v. United States*, 218 F.3d 1305, 1314 (11th Cir. 2000) (en banc).

Second, a federal habeas court determines whether counsel's challenged acts or omissions prejudiced the petitioner, i.e., whether "there is a reasonable probability"—one "sufficient to undermine confidence in the outcome"—that "but for counsel's unprofessional errors, the result of the proceeding would have been

7

different." *Strickland*, 466 U.S. at 694.

The foregoing analysis also applies to claims of ineffective assistance of appellate counsel. "A first appeal as of right . . . is not adjudicated in accord with due process of law if the appellant does not have the effective assistance of an attorney." *Evitts v. Lucey*, 469 U.S. 387, 396 (1985). "A defendant can establish ineffective assistance of appellate counsel by showing: (1) appellate counsel's performance was deficient, and (2) but for counsel's deficient performance he would have prevailed on appeal." *Shere v. Sec'y, Fla. Dep't of Corr.*, 537 F.3d 1304, 1310 (11th Cir. 2008) (citing *Smith v. Robbins*, 528 U.S. 259, 285-86 (2000)). However, appellate counsel "need not advance *every* argument, regardless of merit, urged by the appellant." *Lucey*, 469 U.S. at 394; *see Robbins*, 528 U.S. at 288 (noting that "it is difficult to demonstrate that [appellate] counsel was incompetent" for failing "to raise a particular claim," and "[g]enerally, only when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome" (internal quotations omitted)); *Heath v. Jones*, 941 F.2d 1126, 1132 (11th Cir. 1991) (stating that neglected claim satisfies test for ineffective assistance only if claim would have had "a reasonable probability of success on appeal").

8

### 1. Sophisticated Means Enhancement

In ruling on a § 2255 motion, a "district court is not required to reconsider claims of error that were raised and disposed of on direct appeal." *United States v. Nyhuis*, 211 F.3d 1340, 1343 (11th Cir. 2000); *see Thomas v. United States*, 572 F.3d 1300, 1304 (11th Cir. 2009) (same). Accordingly, because Movant challenged the sophisticated means enhancement on direct appeal, he has a viable claim in this regard, at best, only under the rubric of ineffective assistance of counsel. But that claim fails. In his § 2255 motion, Movant argues that he himself used no sophisticated means; rather, "[h]e only handed over to [a] Co-Defendant, checks that he took from his job." (Doc. 308 at 4). However, the Eleventh Circuit noted on direct appeal that " '[t]here is no requirement that each of a defendant's individual actions be sophisticated in order to impose the enhancement. Rather, it is sufficient if the totality of the scheme was sophisticated.' *United States v. Ghertler*, 605 F.3d 1256, 1267 (11th Cir. 2010)." *Clark*, 417 Fed. Appx. at 908. The court noted in particular Movant's argument "that there was nothing especially complex or intricate about his conduct," and then rejected that argument. *Id.*

> The district court did not clearly err in finding the defendants' check-cashing scheme involved sophisticated means of execution and concealment. The scheme took years of planning, coordination, and

9

> efforts of the many individuals involved in the criminal operation. The conspirators obtained information about the account holders, created and used fraudulent identification documents, cashed the checks at casinos, and traveled across state lines. The totality of the scheme was complex in execution, satisfying U.S.S.G. § 2B1.1(b)(9)(C). *See Ghertler*, 605 F.3d at 1267. Moreover, these facts indicate a sophisticated means of concealing the offense from authorities.

*Id.* Movant has neither shown, nor attempted to show, a reasonable probability that a different argument regarding the sophisticated means enhancement would have prevailed on direct appeal. *See Strickland*, 466 U.S. at 694. Accordingly, his claim of ineffective assistance of counsel regarding the sophisticated means enhancement fails.

### 2. **Victims' Loss Enhancement**

With respect to Movant's claim that he should have received a lesser sentencing enhancement for the loss resulting from the fraud conspiracy, the Government notes the following:

> The PSR determined that the loss amount was $622,900.24. (PSR ¶ 91). Defendant objected. (*Id.*). At the sentencing hearing, it was announced that the parties had stipulated that the loss amount was approximately $450,000. (Doc. 260-4). The court specifically asked defendant if he agreed to the stipulation, and defendant stated that he did. (Doc. 260-4-5). Based upon the stipulation the court found that defendant's offense level would be enhanced by 14 levels [under U.S.S.G. § 2B1.1(b)(1)(H)]. (Doc. 260-6). Defendant did not object to the finding. (Doc. 260-6-7).

[Doc. 313 at 11 (footnote omitted) (formatting altered)]. The Government argues, and

10

this Court agrees, that Movant's stipulation to the loss amount at his sentencing hearing precluded a successful argument on appeal for a lower loss amount, and Movant has not offered a coherent argument to the contrary. Accordingly, this ineffective assistance of counsel claim also fails. *See Strickland*, 466 U.S. at 694.

### 3. **Criminal History Point**

Regarding the criminal history point that Movant received for a conviction "that was more than 15 year[s] old" and for which his sentence was 12 months' probation and a small fine, [*see* Doc. 308 at 5, Doc. 308-2 at 40], the Government argues convincingly that, notwithstanding the claim's questionable merit, raising it on appeal would not have altered the outcome there because Movant's criminal history category of I was the lowest possible category, so that removing the single criminal history point at issue would not have affected Movant's criminal history category or, in turn, his advisory guidelines sentencing range or the sentence he received, [Doc. 313 at 12-13]. Moreover, as the Government also notes, because Movant was convicted on a misdemeanor charge of simple battery on April 16, 1996, [*see* Doc. 308-2 at 40], within ten years of the start of the bank fraud conspiracy to which he pled guilty here, which conspiracy began "in or about September 2005," [*see* Doc. 11 at 1], the single criminal history point that Movant received for the battery conviction at issue was appropriate

11

under U.S.S.G. §§ 4A1.1(c), 4A1.2(e)(2). Accordingly, Movant was not prejudiced by appellate counsel's failure to raise this issue on appeal, and Movant's claim of ineffective assistance of counsel in this regard fails. *See Strickland*, 466 U.S. at 694.

### 4. *Booker* Claim

Finally, with respect to Movant's *Booker* claim that this Court improperly enhanced his sentence based on evidence not proven to a jury beyond a reasonable doubt, the Eleventh Circuit has explained *Booker*'s effect on a federal district court's factfinding at sentencing as follows:

> *Booker* holds that the Sixth Amendment right to trial by jury is violated where *under a mandatory guidelines system* a sentence is increased because of an enhancement based on facts found by the judge that were neither admitted by the defendant nor found by the jury. When the district court applies the Guidelines in an advisory manner, nothing in *Booker* prohibits district courts from making, under a preponderance-of-the-evidence standard, additional factual findings that go beyond a defendant's admissions.

*United States v. Smith*, 480 F.3d 1277, 1281 (11th Cir. 2007) (citations and internal quotations omitted). In accord with *Booker*, this Court applied the guidelines in an advisory manner at Movant's sentencing. [*See* Doc. 260 (Sentencing Tr.) at 42 ("This is a guideline sentence. I believe that considering all the factors of [18 U.S.C. §] 3553, it is the fair and reasonable sentence in this case, and it is proportional considering the

12

conduct of the other co-defendants who have been sentenced in this case.")]; *United States v. Scott*, 426 F.3d 1324, 1328 (11th Cir. 2005) ("Following *Booker*, . . . Section 3553(a) remains in effect, and sets forth numerous factors that guide sentencing. Those factors in turn will guide appellate courts, as they have in the past, in determining whether a sentence is unreasonable." (internal quotations omitted)). Because the District Court followed the post-*Booker* protocol for determining the reasonableness of Movant's sentence in light of the § 3553(a) factors, a claim of *Booker* error had no reasonable probability of success on appeal, and the failure of appellate counsel to raise it did not constitute ineffective assistance. *See Strickland*, 466 U.S. at 694.

### B.     Ground Two:  Aggravated Identity Theft

In the second ground for relief set forth in his motion to vacate, Movant claims that to charge a defendant with aggravated identity theft in violation of 18 U.S.C. § 1028A, the Government "must prove that [the] defendant personally [k]new [the] victims which [Movant] did not nor did he ever have Identification for the victims." [Doc. 308 at 4]. In his supporting brief, Movant argues that under *Flores-Figueroa v. United States*, 556 U.S. 646 (2009), he is actually innocent of aggravated identity theft because there was no "evidence presented or discovered" that he "actually knew any

13

of the victims (the [intended] recipients) of the boxes of checks [he] stole while he was a postal employee, nor did he use any other identification of another person as an alias to commit this crime." [Doc. 308-1 at 12-13].

However, a conviction for aggravated identity theft under 18 U.S.C. § 1028A, as the Supreme Court construed that statute in *Flores-Figueroa*, requires proof only that the defendant knew that the victim was a real person, not that the defendant knew the victim personally. *See United States v. Daniels*, 685 F.3d 1237, 1247 (11th Cir. 2012) ("The *Flores-Figueroa* Court held that § 1028A(a)(1) requires proof that the defendant not only had knowledge that he was unlawfully using a means of identification, but also that the means of identification was that 'of another person.' "); *United States v. Zuniga-Arteaga*, 681 F.3d 1220, 1225 (11th Cir. 2012) ("Viewed together, the text, structure and purpose of the statute make plain the meaning of § 1028A(a)(1)'s text: the provision criminalizes the use of a real person's identity, regardless of whether that person is currently living.").

Movant did not raise his aggravated identity theft claim on direct appeal, so he has procedurally defaulted it for purposes of collateral review:

> Generally speaking, an available challenge to a criminal conviction or sentence must be advanced on direct appeal or else it will be considered procedurally barred in a § 2255 proceeding. A ground of error is usually

14

"available" on direct appeal when its merits can be reviewed without further factual development. When a defendant fails to pursue an available claim on direct appeal, it will not be considered in a motion for § 2255 relief unless he can establish cause for the default and actual prejudice resulting from the alleged error.

*Mills v. United States*, 36 F.3d 1052, 1055 (11th Cir. 1994) (also noting exception for fundamental miscarriage of justice if, in exceptional case, § 2255 movant can establish his actual innocence); *see McDaniel v. United States*, No. 09-16112, 2012 WL 4497637, at *2 (11th Cir. Oct. 2, 2012) (same); *Lynn v. United States*, 365 F.3d 1225, 1234 (11th Cir. 2004) (same).

Movant does not allege cause to excuse his procedural default of this claim, but instead seeks to establish his actual innocence. (Doc. 308-1 at 12-13). However, in order to do so after entering a guilty plea, a § 2255 movant "must demonstrate that, in light of all the evidence, it is more likely than not that no reasonable juror would have convicted him." *Bousley v. United States*, 523 U.S. 614, 623 (1998) (internal quotations omitted) (noting that " 'actual innocence' means factual innocence, not mere legal insufficiency"). Here, Movant has failed to do so. Movant stole boxes of checks out of the United States mail that were en route to the victims' home addresses, and he has presented no evidence to support his factual innocence, much less any evidence that more likely than not would convince a reasonable juror that Movant believed that those

15

addresses were fictitious and that the stolen checks were not intended for real persons. If Movant's co-conspirators were planning to use fictitious names and addresses on the false identifications they used to cash the checks, they hardly would have needed Movant to steal boxes of checks from the United States mail rather than simply ordering or printing the checks themselves. It is apparent to this Court, as it should have been to Movant and would be to a reasonable juror, that the conspirators needed the checks of real persons to carry out their bank fraud conspiracy. Accordingly, Movant's ground two claim fails.

### C. Ground Three: Restitution

In ground three of his motion to vacate, Movant argues that because he received only $250.00 for each transaction in which he provided personal checks stolen from the mail to his co-conspirators, his restitution amount should be adjusted accordingly. (Doc. 308 at 4). In his supporting brief, Movant argues that because his profit from the conspiracy did not exceed five thousand dollars, his restitution obligation should be reduced. (Doc. 308-1 at 16-17). However, "a petitioner cannot challenge a restitution sentence with a motion to vacate his sentence--even when joined with a claim seeking release from custody--because the language of section 2255 limits its application to 'a prisoner in custody . . . claiming the right to be released.' " *Arnaiz v. Warden*, 594 F.3d

16

1326, 1329 (11th Cir. 2010) (citing *Mamone v. United States*, 559 F.3d 1209, 1211 (11th Cir. 2009)). Accordingly, Movant's ground three claim provides no basis for § 2255 relief.

### D. Ground Four: Criminal History Point

In ground four of his motion to vacate, Movant contends that he was improperly given one criminal history point based on a conviction that was too old to be counted. [Doc. 308 at 5]. However, as Movant did not raise this claim on direct appeal, he has procedurally defaulted it. *See Mills*, 36 F.3d at 1055. Moreover, as discussed above, because Movant suffered no prejudice from appellate counsel's failure to raise this claim on direct appeal, Movant has failed to establish ineffective assistance of appellate counsel as cause to excuse his procedural default. Accordingly, Movant's final claim also fails.

## III. Certificate of Appealability

A § 2255 movant must obtain a certificate of appealability (COA) before appealing the denial of a motion to vacate. 28 U.S.C. § 2255(d); 28 U.S.C. § 2253(c)(1)(B). A COA may issue only when the movant makes a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

When the district court denies a habeas petition on procedural grounds

17

> without reaching the prisoner's underlying constitutional claim, . . . a certificate of appealability should issue only when the prisoner shows both that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right *and* that jurists of reason would find it debatable whether the district court was correct in its procedural ruling.

*Jimenez v. Quarterman*, 555 U.S. 113, 118 n.3 (2009) (internal quotations omitted). Because there is no reasonable dispute that Movant's claims are either barred from merits review or lacking in arguable merit, or both, a certificate of appealability should not issue in this matter.

## IV. Conclusion

For the foregoing reasons, **IT IS RECOMMENDED** that the Court **DENY** Movant's 28 U.S.C. § 2255 motions, [1:08-cr-190, Doc. 308; 1:09-cr-341, Doc. 11], and **DENY** him a certificate of appealability.

The Clerk is **DIRECTED** to terminate the referral to the Magistrate Judge.

**IT IS SO RECOMMENDED and DIRECTED**, this 20th day of November, 2012.

_____
**ALAN J. BAVERMAN**
**UNITED STATES MAGISTRATE JUDGE**

AO 72A
(Rev.8/82)